Now we'll hear United States v. Carter. I have a hubbub at the back, so we'll just wait a minute here. All right. All right. Good morning. Good morning, Your Honors. May it please the Court, I'm Theodore Koch. I represent Garrett Carter. The only issue on appeal is the reasonableness of the sentence imposed by the district court. And I recognize that this was a sentence that was below the mandatory minimum, and it was a low end of the guidelines sentence. The mandatory minimum was 10 years, and the guidelines range was 70 to 87 months. We could go under the mandatory minimum because of the safety valve, and he got 70 months. And he had 10 times the amount necessary for the mandatory minimum. Correct, Your Honor. The concept of reasonableness of the sentence is a somewhat subjective concept. And essentially what the district court judge did, what Judge Thompson did, he looked at the offense conduct, he looked at the guidelines, and he concluded that there was nothing outside of the ordinary in this case that would justify going below the sentencing guidelines. In the government's brief, they note that there was nothing on the records where he said, I'm presuming that the guidelines are reasonable. But I think it can be inferred from the whole approach that he took that his assumption was that the guidelines are reasonable. And the part that I think that he missed. We have, of course, said that in the vast majority of cases, the guidelines sentence will be reasonable. Yes, that's correct. What he said was not inconsistent with our own precedent. Not exactly. No, you're right. It wasn't, Your Honor. Isn't that the end of the story if you agree with that? No, no, because what he didn't look at or what he didn't take into enough consideration. He also said that the guideline range is the starting point. District court has to make the calculation and start from there, right? Yes, Your Honor. And that's what Judge Thompson did? He did that. But under 3553, district court has to consider the characteristics of the offender. And what we had here, Garrett Carter . . . Did he fail to take into account any of the statutory factors? He didn't state on the record that he was not taking into account any of the statutory factors. He doesn't have to recite each of them? Correct. He's been on the bench a good couple of years. Yes. He's a judge. He knows what his powers are. That's right. Didn't he actually recite all of the factors? I thought he did. I thought he did, too. Yes. He did more than what a lot of judges would do. What we had in front of him . . . Why was this a substantively unreasonable sentence? Because the person that he was sentencing had . . . He was safety valve eligible because he had one criminal history category point. He was a unique . . . His situation was unique in that he . . . The reason why he was not released on bail prior to his case being resolved was because of this odd combination of international connections that he had. His mother is Belizean. He was back and forth between Belize and America. That, more than anything, was the reason why he couldn't be released. It was those factors that worked against him then . . . Is there a reason for a lower sentence? The only thing that Judge Thompson said about all of that, about the mitigating factors of his life, was that it wasn't the information that he had wanted to hear. The information was before him. It's hard to say on this record, at least, that given what he said, that he didn't consider that information. He determined that that wasn't enough to go down to where you wanted the sentence to be, which was 30 months. That's correct. I mean, there are times when the laws that Congress passes are not necessarily the sole definition of what's reasonable. For example, I think of the Kimbrough case and the crack to powder ratio. Just because the guidelines say something and Congress says something, doesn't mean that what would be reasonable can't exist within that framework, if I'm making sense. You started out by saying it's somewhat subjective, and that is exactly why we accord substantial deference to the sentencing decisions of district courts. Thank you. You reserved a couple of minutes for Bob. I did. So we should hear that. I will. I will use it. Thank you. Good morning, Your Honors. On behalf of the United States, I'm Mike Gustafson of the U.S. Attorney's Office. I was not the attorney who handled the sentencing itself. It was Brian Leeming who authored the memo. Judge Thompson worked very hard, record's clear. He worked hard to get to a fair, just, and reasonable sentence, and there was no precise number that would be exactly right. And that's why the district court judge is vested with the discretion and the power and the wisdom and the judgment that we hope judges do in these cases. And in this case, Judge Thompson did exactly what the Supreme Court and this court instruct. He calculated the guidelines properly. And his own words, he said, that's a starting point for my analysis. And then he asked questions. He wanted to know more about the individual defendant so he could treat that person particularized and individually. And ultimately, at the end of the day, he was comfortable with imposing a sentence of 70 months. Fifty months below what Congress says 100 grams of PCP would require, not the 600 that this defendant had. And so, against that backdrop, unless the court has any questions, I would respectfully submit that Judge Thompson did not err procedurally or substantively. Your adversary's brief seems to suggest that this defendant is exceedingly unusual in having no criminal background or history. And that this episode is an isolated instance of appalling judgment. But that we're really looking at a, and the judge was looking at a person who has no deviation from law before this. He's an advocate and that's the representations and the arguments he made. I'd respectfully disagree. 600 grams of PCP is not something you just stumble into. That's a significant amount. A lot of PCP. Yes, it was 126,000 dosage units when you extrapolated out. So that's not someone's first trip to the rodeo, if you will. He also was clear because he qualified for the safety belt. He admitted having done this three or four occasions previously, his own admission. The government seemed to think it might have been more, but certainly it was not aberrational. And I think in reading the transcripts, I was not there. The court was frustrated with the explanation from the defendant of saying, I saw an opportunity. And it was vague and not really, it was kind of hollow. And I think the judge was looking for more. That's why he asked those questions that he did. Were you a mule? I mean, he didn't say that, but I think he was looking for context as to explain what was going on here, other than someone who had access to get 126,000 dosage units of a very dangerous drug and get it on credit. That was the other thing that the judge understood in sentencing, that this was not something he had to pay for. Mr. Carter had a trusted source of supply, and that would imply a relationship, a prior relationship. So at the end of the day, Your Honor, I think while the parties can disagree, the government's view, and ultimately Judge Thompson's view, that Mr. Carter was not some naive soul who accidentally stumbled into his first drug deal. Criminal history and past criminal conduct. Yes, Your Honor. I oftentimes tell folks, you know, we just didn't catch it before. But yes, there were things going on. So unless the court has any further questions, the government will rely on its papers. Thank you. Thank you. Your rebuttal. I always appreciate Mr. Gustafson. I actually didn't hear much that I would need to rebut in that. I would just stand by it. It's not mandatory. Thank you, Your Honors. Thank you both. We'll reserve decision in the case of Anselm versus the Commissioner of Social Security. We will take that on submission. That's the last case on calendar. Please adjourn court.